

# THE ATTORNEY GENERAL
# OF TEXAS

April 16, 1990

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable William P. Hobby         Opinion No.  JM-1156
Lieutenant Governor
The State of Texas Office          Re:  Child   care  facilities   in
  of the Lieutenant Governor       building owned or leased by the
P. O. Box 12068                    State   of   Texas     (RQ-1905)
Austin, Texas  78711-2068

Dear Governor Hobby:

You ask several questions about Senate Bill 1480.  Acts 1989, 71st Leg., ch. 1207,  at 4904.  That bill  established the Child  Care Development  Board,  which is  charged  with developing and administering a program to provide child care services  for  state  employees  who  work  in   state-owned buildings.  V.T.C.S.  art. 6252-3e.   The  bill  also  made several amendments to the provisions of the State Purchasing and General Services Act, article 601b, V.T.C.S., that  deal with the lease of space in state-owned buildings to  private tenants.

Your first question is whether the site must be located in a  state-owned building.[1]   The language  of Senate  Bill 1480  and  the  legislative  history  make  clear  that  the legislature contemplated  that the  site  for a  child  care facility would be in a state-owned building.  The caption to Senate Bill  1480  states  that  the  act  relates  "to  the creation of a Child Care Development Board and a Child  Care Advisory Committee and  to using  state-owned buildings  for child care facilities."  A bill analysis prepared for Senate Bill 1480  states  that  the  purpose  of  the  bill  is  to "implement a program to use state-owned buildings for  child care  facilities."    Bill  Analysis,  S.B. 1480,  71st  Leg. (1989).   Also, section 7  of article 6252-3e provides  that

---

1.  We  do  not  consider  what  particular   financing arrangements  may  qualify  a  building  as  a  "state-owned building."

the Purchasing and General Services Commission shall lease a state child care facility site at a reasonable rate. A requirement that the State Services and General Purchasing Commission lease the space for the facility at a reasonable rate makes sense only if the facility site is owned by the state. See V.T.C.S. art. 601b, § 4.15 (dealing with lease of space in state-owned buildings to private tenants). We think that the caption to Senate Bill 1480 and the provisions discussed above make clear that child care facilities developed under article 6252-3e were intended to be in state-owned buildings.

Your second question is:

> Under SB 1480 and Article 5, State Purchasing and General Services Act, may a child care facility site be located in a building of appropriate size that would be newly constructed specifically for the board by the commission, or is the board limited respecting newly constructed state buildings to buildings that contain at least 100,000 square feet of net usable space, under section 5.01(b), State Purchasing and General Services Act?

Most of the provisions of Senate Bill 1480 deal with the development of a child care facility in existing state-owned space. Nothing in the bill suggests that the legislature intended that a building be built solely for child care. Our conclusion that Senate Bill 1480 does not authorize the construction of a building solely for the purpose of providing a child care facility is supported by section 5.01 of article 601b, which provides:

> (a) Under such terms and conditions as may be provided by law, the commission may acquire necessary real and personal property, modernize, remodel, build, and equip buildings for state purposes, and make contracts necessary to carry out and effectuate the purposes herein mentioned in keeping with appropriations authorized by the legislature. The commission shall not sell or dispose of any real property of the state except by specific authority from the legislature.

(b) The Child Care Development Board shall determine if a child care facility may be included in a state-owned office building constructed after September 1, 1989, that contains at least 100,000 square feet of net usable space and shall notify the commission of that determination. The commission shall notify the Child Care Development Board of a project to rehabilitate or renovate substantially an existing state-owned office building containing at least 100,000 square feet of net usable space before developing the rehabilitation or renovation plan. Not later than the 30th day after the date on which the Child Care Development Board receives the notice, the board shall determine if a child care facility may be included in the rehabilitation or renovation project and shall notify the commission of that determination. The commission shall include a child care facility in a construction, rehabilitation, or renovation project if the Child Care Development Board determines that the child care facility should be included.

The language that is now subsection (a) has been in article 601b since it was adopted in 1979. Acts 1979, 66th Leg., ch. 773, at 1908. Subsection (a) addresses the authority of the State Purchasing and General Services Commission to construct new state buildings. Senate Bill 1480 added subsection (b), which deals with inclusion of space for a child care facility in a newly-constructed state building. The fact that subsection (b) refers to the "inclusion" of a child care facility in a newly constructed building indicates that the legislature did not intend that new state buildings be constructed solely for the purpose of housing a child care facility.

Your third question is:

Once a site is obtained, may it be leased to a child care provider at a reasonable rate that is less than fair market value under Section 4.15(b), State Purchasing and General Services Act; Section 7(a), Article 6252-3e, Revised Statutes; Article III, Section 51, of

the Texas   Constitution; and   other   relevant law?

Section 7(a) of article 6252-3e provides in part:

> The   [State   Purchasing   and   General Services]   commission   shall   lease   a   state child care facility site at a reasonable rate to a   child   care provider   selected   by   the board.

Section 4.15 of article 601b   deals with the lease of   space in state-owned buildings   to private   tenants.   Senate   Bill 1480 amended subsection   (f) of section   4.15 to provide   as follows:

> The   commission   may   lease   space   in   a building after the   lease is negotiated   with the tenant or   after the   tenant is   selected through a   competitive bidding   process.   In either   case,   the   commission   shall   follow procedures   that   promote   competition   and protect the   interests of   the state;   except that, if the space is leased for the   purpose of providing   child [day]   care services   for state employees [of-the-building], the   Child Care   Development   board,   in   its   sole discretion,   [commission] may select the child care   provider   [tenant]   through   procedures other than   competitive   bidding.   (Language added   by   S.B.   1480   emphasized;   language deleted by S.B. 1480 overstricken.)

Read together, those   provisions indicate that   space for   a child care   facility is   to   be leased   at   a rate   that   is reasonable   to   charge   for   a   child   care   facility,   not necessarily at the rate that   could be charged for the   same space if it could be leased for other purposes.   Therefore, we conclude that space to be   used as a child care   facility is not required to be leased at fair market value.

You ask whether leasing space for child care facilities at a rate lower than fair   market value would be a   donation of public   property and   therefore in   violation of   article III, section 51, of the constitution.   Article III,   section 51, would not   prohibit lease   of public   property for   less

than fair market value if it served a public purpose.[2] Attorney General Opinions JM-1091 (1989); MW-373 (1981). The bill analysis to Senate Bill 1480 sets out the public purpose to be achieved by leasing space for child care facilities at a rental rate that may be less than fair market rates:

> Various studies have shown that absenteeism, tardiness and employee turnover can be reduced substantially when employees with young children have convenient, economical, quality child-care services available. Such studies have also shown positive effects on employee morale, job satisfaction, and productivity.

Bill Analysis, S.B. 1480, 71st Leg. (1989). We think the courts would agree with the legislature that leasing space for child care facilities at a rate less than fair market value in order to improve employee performance is a public purpose.

Your fourth question is:

> Under Section 7(a), Article 6252-3e, Revised Statutes, may the board determine and set what constitutes a reasonable rate for the lease as part of the board's power to prescribe by rule provisions that must be included in a lease to a child care provider?

Section 7(a) of article 6252-3e provides:

> The [State Purchasing and General Services] commission shall lease a state child care facility site at a reasonable rate to a child care provider selected by the board. The [Child Care Development] board by rule may prescribe provisions that must be included in a lease and provisions that may not be included in a lease.

---

2. There must also be adequate controls to assure that the public purpose is achieved.

We think the plain meaning of that provision is that the determination of a "reasonable" rental rate was to be a matter for the State Purchasing and General Services Commission, not the Child Care Development Board.

## S U M M A R Y

Senate Bill 1480, Acts 1989, 71st Leg., ch. 1207, authorizes the development of child care facilities in state-owned buildings. It does not authorize the state to lease space for child care facilities in privately owned buildings. The bill does not authorize the construction of a new state building solely for the purpose of housing a child care facility. The bill authorizes the State Services and General Purchasing Commission to rent space for a child care facility at a rate that is "reasonable" to charge for a child care facility; that rate may be less than fair market value. It is for the State Services and General Services Commission, not the Child Care Development Board, to determine what constitutes a "reasonable" rental rate.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General